## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON-3 DIVISION

IN RE:  AARON WESLEY HEIL AND AUBRIE
CLARA HEIL, DEBTORS

CHAPTER 7 PROCEEDING

CASE NO. 25-00686-KMS

### MOTION FOR RELIEF FROM AUTOMATIC STAY
### AND FOR OTHER RELIEF

COMES NOW, Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto, a party in interest in this cause, by and through its attorney, and moves this Court to lift the automatic stay as to certain property of the Debtors, and for other relief, and in support of said motion would respectfully show unto the Court the following to wit:

I.

That on or about March 14, 2025, the above named Debtors filed a voluntary petition in Bankruptcy pursuant to 11 U.S.C. Chapter 7.  By operation of 11 U.S.C. 362, the Plaintiff is prohibited from commitment of any judicial proceeding against the Defendants, any act to obtain possession of property of the estate, or any act to enforce any lien against the property of the estate.

II.

That the Bankruptcy Court has jurisdiction over this proceeding pursuant to 28 U.S.C. 1471 and 11 U.S.C. 362.

III.

That on or about March 17, 2022, Aurbrie C Heil and Aaron W Heil, did execute a certain Retail Installment Contract in favor of Courtesy Motors and secured by the following real property:

**2016 FORD EXPEDITION, VIN #1FMJU1HT2GEF50208**

A copy of said Retail Installment Contract attached hereto as an Exhibit as though fully copied herein.  The value of the subject property is $13,675.00 according to the J.D. Power Used Cars/Trucks attached as Exhibit 1.

### IV. Debtor

That the Debtors have defaulted in the payment of the current months' indebtedness and are now due and owing for the May 15, 2025 payment and all subsequent payments.  The current monthly payment is $464.63.  As of April 30, 2025, the payoff amount is $16,547.15.

### V.

Plaintiff would show that sufficient cause exists for the termination, annulment or modification of the automatic stay as provided in 11 U.S.C.362 (d) (1) because of the failure of the Defendants to make the payments set forth above and because subject property is of inconsequential value or benefit to the estate and further that the Trustee should abandon the property pursuant to 11 U.S.C. §554(b).  Plaintiff would urge the Court to terminate, modify or lift the automatic stay and abandon the subject property from the estate of the Debtors, so as to allow the Plaintiff to pursue all remedies available to it under the terms and conditions of said Retail Installment Contract, and applicable state law, including initiation of foreclosure proceedings.  Plaintiff further asks for attorney fees and court costs incurred.  Plaintiff also requests that the 14-day stay imposed by FRBP 4001(a)(3) be waived.

WHEREFORE, PREMISES CONSIDERED, Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto files this Motion and prays that the automatic stay afforded by 11 U.S.C. 362 be terminated, modified or lifted, after notice and hearing, so as to allow Plaintiff to pursue its remedies against the property which is subject to said Retail Installment Contract, that the

Trustee be ordered to abandon the property from the estate pursuant to 11 U.S.C. §554(b) and for

attorney's fees and costs incurred. Plaintiff also requests that the 14-day stay imposed by FRBP

4001(a)(3) be waived.

Respectfully submitted
LOGS LEGAL GROUP LLP


  /s/ Eric C. Miller
William Savage #105785
Eric Miller #102327
Attorney for Creditor

## CERTIFICATE OF SERVICE

I, the undersigned, of the firm of LOGS Legal Group LLP, do hereby certify that I have this date provided a copy of the foregoing either by electronic case filing or by United States mail postage pre-paid to the following:

Derek A. Henderson, Chapter 7 Trustee
d_henderson@bellsouth.net

Thomas Carl Rollins, Jr., The Rollins Law Firm, PLLC, Attorney for Debtor
trollins@therollinsfirm.com

Aaron Wesley Heil
602 10th Ave
Magee, MS 39111

Aubrie Clara Heil
602 10th Ave
Magee, MS 39111

Dated: May 27, 2025

Respectfully Submitted
LOGS LEGAL GROUP LLP

/s/ Eric C. Miller
William Savage #105785
Eric Miller #102327
Attorney for Creditor

Presented by:
William Savage #105785
Eric Miller #102327
LOGS LEGAL GROUP LLP
579 Lakeland East Drive, Suite D
Flowood, MS 39232
Telephone No. (601) 981-9299
Facsimile No. (601) 981-9288
E-mail: logsecf@logs.com
BK Case No. 25-00686-KMS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
JACKSON-3 **DIVISION**

IN RE:  AARON WESLEY HEIL AND AUBRIE        CHAPTER 7 PROCEEDING
CLARA HEIL, DEBTORS

                                                 CASE NO. 25-00686-KMS

<u>ORDER GRANTING RELIEF FROM AUTOMATIC STAY</u>
<u>DOCKET NO. _____</u>

THIS CAUSE came on for consideration on the motion to lift automatic stay filed by Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto, and the Court finds that the Debtor, Aaron Wesley Heil and Aubrie Clara Heil, have failed to respond to plaintiff's Motion.

IT IS ORDERED AND ADJUDGED that the Automatic Stay provided for in 11 U.S.C. 362 be modified to allow Wells Fargo Bank, N.A., d/b/a Wells Fargo Auto to pursue all remedies available to it under the applicable state law against Debtors' property described as follows:

2016 FORD EXPEDITION, VIN #1FMJU1HT2GEF50208

Entry of this order shall constitute the entry of a final judgment pursuant to Bankruptcy Rule 9021 and Rule 58 of the Federal Rules of Civil Procedure and shall be applicable to any subsequent Debtors conversion of this case to any other Chapter under the Bankruptcy Code.

IT IS FURTHER ORDERED AND ADJUDGED that the Trustee shall abandon the hereinabove described property from the estate pursuant to 11 U.S.C. §554(b).

**##END OF ORDER##**

Presented by:
William Savage #105785
Eric Miller #102327
LOGS LEGAL GROUP LLP
579 Lakeland East Drive, Suite D
Flowood, MS 39232
Telephone No. (601) 981-9299
Facsimile No. (601) 981-9288
E-mail: logsecf@logs.com
BK Case No. 25-00686-KMS

# Exhibit "1"

# LAW 553-MS-ARB-ea 8/21

## RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
### (WITH ARBITRATION PROVISION)

| Buyer Name and Address (Including County and Zip Code) | Co-Buyer Name and Address (Including County and Zip Code) | Seller-Creditor (Name and Address) |
|---|---|---|
| Aubrie C Heil<br>159 Emmitt Brown RD<br>Mendenhall, MS 39114 SIMPSON | Aaron W Heil<br>159 Emmitt Brown RD<br>Mendenhall, MS 39114 SIMPSON | COURTESY MOTORS INC<br>6393 hwy 98 w<br>HATTIESBURG, MS 39402 |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller - Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis. The Truth-In-Lending Disclosures below are part of this contract.

| New/Used | Year | Make and Model | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|
| Used | 2016 | Ford Expedition | 1FMJU1HT2GEF50208 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural   ☐ N/A _____ |

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $ 2,300.00 is |
|---|---|---|---|---|
| 7.69 % | $ 6,807.11 | $ 26,646.25 | $ 33,453.36 | $ 35,753.36 |

### Your Payment Schedule Will Be:
(e) means an estimate

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 464.63 | Monthly beginning 05/01/2022 |
| N/A | $ N/A | N/A |
| N/A | | |

**Late Charge.** If a payment is not received in full within ___10___ days after it is due, you will pay a late charge of ___5___ % of the part of the payment that is late with a maximum charge of $ ___5.00___ , unless the vehicle is a commercial vehicle. For a commercial vehicle, if a payment is not received in full within ___15___ days after it is due, you will pay a late charge of ___4___ % of the part of the payment that is late with a minimum charge of $ ___5.00___ and a maximum charge of $ ___50.00___ .

**Prepayment.** If you pay early, you will not have to pay a penalty.

**Security Interest.** You are giving a security interest in the vehicle being purchased.

**Additional Information:** See this contract for more information including information about nonpayment, default, any required repayment in full before the scheduled date and security interest.

**Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.**
**Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.**

☐ VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance): If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $ ___N/A___** and is also shown in item 4B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 4D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ___72___ Mos.                            OSI _____
                                                          Name of Gap Contract
I want to buy a gap contract.
Buyer Signs X **A** *Aubrie Heil*

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 4 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.

Buyer Signs X **B** *Aubrie Heil*          Co-Buyer Signs X **B** *Aaron Heil*

*TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY*

## ITEMIZATION OF AMOUNT FINANCED

1  Cash Price (including $ ___1,161.25___ sales tax)                                        $ ___24,046.25___ (1)

2  Total Downpayment =
   Trade-in   N/A              N/A              N/A
            (Year)         (Make)                (Model)

   Gross Trade-In Allowance                                         $ ___N/A___
   Less Pay Off Made By Seller to N/A                               $ ___N/A___
   Equals Net Trade In                                              $ ___N/A___
   + Cash                                                           $ ___2,300.00___
   + Other N/A                                                      $ ___N/A___
   + Other N/A                                                      $ ___0.00___
   + Other N/A                                                      $ ___N/A___
   (If total downpayment is negative, enter "0" and see 4J below)   $ ___2,300.00___ (2)

3  Unpaid Balance of Cash Price (1 minus 2)                         $ ___21,746.25___ (3)

4  Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   A  Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
      Life                                        $ ___N/A___
      Disability                                  $ ___N/A___         $ ___N/A___
   B  Vendor's Single Interest Insurance Paid to Insurance Company    $ ___N/A___
   C  Other Optional Insurance Paid to Insurance Company or Companies $ ___N/A___
   D  Optional Gap Contract                                          $ ___895.00___
   E  Official Fees Paid to Government Agencies
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
   F  Government Taxes Not Included in Cash Price                    $ ___N/A___
   G  Government License and/or Registration Fees
      N/A
      N/A                                                            $ ___N/A___
   H  Government Certificate of Title Fees                           $ ___10.00___
   I  Document/Service Fee                                           $ ___340.00___
      A DOCUMENT/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED
      BY LAW, HOWEVER, IT MAY BE CHARGED TO A BUYER/LESSEE FOR THE
      PREPARATION, HANDLING AND PROCESSING OF DOCUMENTS AND THE
      PERFORMANCE OF SERVICES RELATED TO THE SALE OR LEASE OF A MOTOR
      VEHICLE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY
      REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.
   J  Other Charges (Seller must identify who is paid and describe purpose)
      to N/A                    for Prior Credit or Lease Balance    $ ___N/A___
      to SAFE GUARD H/M         for Service Contract                 $ ___3,655.00___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      to N/A                    for N/A                              $ ___N/A___
      Total Other Charges and Amounts Paid to Others on Your Behalf  $ ___4,900.00___ (4)

5  Amount Financed - Principal Balance (3 + 4)                       $ ___26,646.25___ (5)
6  Finance Charge                                                    $ ___6,807.11___ (6)
7  Total of Payments - Time Balance (5 + 6)                          $ ___33,453.36___ (7)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 5, is paid in full on or before
___N/A___ , Year ___N/A___ , SELLER'S INITIALS ___N/A___

**Returned Check Charge:** You agree to pay us the actual charges assessed by a financial institution up
to $ ___15.00___ , if any check you give us is dishonored for insufficient funds.

---

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is checked on page 1 of this contract.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

**Check the insurance you want and sign below:**

### Optional Credit Insurance
☐ Credit Life:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
☐ Credit Disability:  ☐ Buyer  ☐ Co-Buyer  ☐ Both
Premium:
   Credit Life $ ___N/A___
   Credit Disability $ ___N/A___
Insurance Company Name
N/A
Home Office Address
N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 4A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments. Coverage for credit life insurance and credit disability insurance ends on the original due date for the last payment unless a different term for the insurance is shown below.

### Other Optional Insurance
☐  N/A                                   N/A
      Type of Insurance                   Term
Premium $ ___N/A___
Insurance Company Name
N/A
Home Office Address
N/A

☐  N/A                                   N/A
      Type of Insurance                   Term
Premium $ ___N/A___
Insurance Company Name
N/A
Home Office Address
N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost. I want the insurance checked above.

X C   N/A                                N/A
Buyer Signature                          Date

X C   N/A                                N/A
Co-Buyer Signature                       Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED.**

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

T551785368-DP551785369  - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

**OTHER IMPORTANT AGREEMENTS**

**1.  FINANCE CHARGE AND PAYMENTS**

**a.  How we will figure Finance Charge.** We will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed.

**b.  How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of the Amount Financed and to other amounts you owe under this contract in any order as the law allows.

**c.  How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d.  You may prepay.** You may prepay all or part of the unpaid part of the Amount Financed at any time without penalty. If you do so, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.

**2.  YOUR OTHER PROMISES TO US**

**a.  If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.

**b.  Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.

**c.  Security Interest.**

You give us a security interest in:

• The vehicle and all parts or goods put on it;
• All money or goods received (proceeds) for the vehicle;
• All insurance, maintenance, service, or other contracts we finance for you; and
• All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d.  Insurance you must have on the vehicle.**

You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as an additional insured and as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge computed at the Annual Percentage Rate shown on page 1 of this contract or, at our option, the highest rate the law allows.

If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.

**e.  What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

**3.  IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**

**a.  You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.

If you pay late, we may also take the steps described below.

**b.  You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once, subject to your right to redeem the vehicle described below. Default means:

• You do not pay any payment on time;
• You give false, incomplete, or misleading information during credit application;
• You start a proceeding in bankruptcy or one is started against you or your property; or
• You break any agreements in this contract.

The amount you will owe will be the unpaid part of the Amount Financed plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.

**c.  You may have to pay collection costs.** If we hire an attorney who is not our salaried employee to collect what you owe, you will pay the attorney's fee and court costs as the law allows. The attorney's fee will not exceed 15% of the amount you owe.

**d.  We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.

**e.  How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem) by paying all payments that are past due when you redeem, any late charges, and any expenses we incurred related to retaking the vehicle, holding it, and preparing it for sale. After you redeem, you must make the remaining payments under this contract. Your right to redeem ends when we sell the vehicle.

**f.  We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.

We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY
TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

**g.  What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

## 4.  SERVICING AND COLLECTION CONTACTS

You agree that we may try to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

## 5.  APPLICABLE LAW

Federal law and the law of Mississippi apply to this contract.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose the American Arbitration Association (www.adr.org) or any other organization to conduct the arbitration subject to our approval. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this contract was executed. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Provision shall be unenforceable.

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

*LAW 553-MS-ARB-ea 8/21 v1*     Page 4 of 5

25-00686-KMS   Dkt 21   Filed 05/27/25   Entered 05/27/25 13:04:21   Page 12 of 15

T551785368-DP551785369 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

**NO COOLING OFF PERIOD**

**State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this contract, you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply because you change your mind. This notice does not apply to home solicitation sales.**

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs **X D** _Aubrie Heil_   Co-Buyer Signs **X D** _Aaron Heil_

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**See the rest of this contract for other important agreements. Any dispute resolution agreement you sign with us or an assignee of this contract will apply to claims related to this contract.**

_The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge._

**NOTICE TO THE BUYER: 1. Do not sign this contract before you read it or if it contains any blank spaces. 2. You are entitled to an exact copy of the contract you sign.**

**You agree to the terms of this contract and any dispute resolution agreement you signed with this contract. You confirm that before you signed this contract and any dispute resolution agreement, we gave them to you, and you were free to take them and review them. You acknowledge that you have read all pages of this contract, including the arbitration provision on page 4, before signing below. You confirm that you received a completely filled-in copy of these documents when you signed them.**

Buyer Signs **X E** _Aubrie Heil_   Date 03/17/2022   Co-Buyer Signs **X E** _Aaron Heil_   Date 03/17/2022

Buyer Printed Name Aubrie C Heil   Co-Buyer Printed Name Aaron W Heil

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A   Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here   **X**   N/A   Address N/A

Seller signs COURTESY MOTORS INC   Date 03/17/2022   By **X E** _KIM RAYBORN_   Title F&I

Seller assigns its interest in this contract to   Wells Fargo Auto   (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse   ☒ Assigned without recourse   ☐ Assigned with limited recourse

Seller

By **X F** _KIM RAYBORN_   Title F&I

TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY

**LAW** FORM NO. 553-MS-ARB-ea (REV. 8/21)
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

# CERTIFICATE OF TITLE



Form #

## STATE OF MISSISSIPPI

## ORIGINAL

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 1FMJU1HT2GEF50208 | FORD | 2016 | EXPEDITION | UV | MS0317062656 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 04/01/2022 | | 6 | USED | PC / | 100963 ACTUAL |

OWNER(S)

HEIL, AUBRIE C OR AARON W
159 EMMITT BROWN RD
MENDENHALL MS 39114-6185

BRANDS

1ST LIENHOLDER

WELLS FARGO AUTO
PO BOX 997517
SACRAMENTO CA 95899-7517

DATE: 03/17/2022

2ND LIENHOLDER

DATE:

MAIL TO

WELLS FARGO AUTO
PO BOX 997517
SACRAMENTO CA 95899-7517

LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
(LIENHOLDER)                                    (SIGNATURE AND TITLE)

THIS _____ DAY OF _____

2ND LIEN _____ BY _____
(LIENHOLDER)                                    (SIGNATURE AND TITLE)

THIS _____ DAY OF _____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE 1ST DAY OF APRIL

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1. Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER

MISSISSIPPI DEPARTMENT OF REVENUE

## VOID IF ALTERED



# J.D. POWER

**4/30/2025**

## J.D. POWER Used Cars/Trucks

**Wells Fargo- Master B2B Account**

550 South 4th Street
7th Floor
Minneapolis, MN 55415
555-555-5555
Alex.L.Werner@wellsfargo.com

## Vehicle Information

| | |
|---|---|
| **Vehicle:** | 2016 Ford Expedition Utility 4D XLT 3.5L V6 Turbo |
| **Region:** | Southeastern |
| **Period:** | April 30, 2025 |
| **VIN:** | 1FMJU1HT2GEF50208 |
| **Mileage:** | 112,500 |
| **Base MSRP:** | $45,435 |
| **Typically Equipped MSRP:** | $49,775 |
| **Weight:** | 5,549 |



## J.D. POWER Used Cars/Trucks Values

| | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| **Monthly Used** | | | | |
| Rough Trade-In | $8,650 | N/A | N/A | **$8,650** |
| Average Trade-In | $10,000 | N/A | N/A | **$10,000** |
| Clean Trade-In | $11,125 | N/A | N/A | **$11,125** |
| | | | | |
| Clean Loan | $10,025 | N/A | N/A | **$10,025** |
| Clean Retail | $13,675 | N/A | N/A | **$13,675** |
| **Weekly Auction** | | | | |
| Low | $7,600 | N/A | N/A | **$7,600** |
| Average | $9,925 | N/A | N/A | **$9,925** |
| High | $12,275 | N/A | N/A | **$12,275** |
| **Weekly Used** | | | | |
| Rough Trade-In | N/A | N/A | N/A | **N/A** |
| Average Trade-In | N/A | N/A | N/A | **N/A** |
| Clean Trade-In | N/A | N/A | N/A | **N/A** |
| | | | | |
| Clean Loan | N/A | N/A | N/A | **N/A** |

**J.D. POWER**

4/30/2025

J.D. POWER Used Cars/Trucks

|  | Base | Mileage Adj. | Option Adj. | Adjusted Value |
|---|---|---|---|---|
| Clean Retail | N/A | N/A | N/A | **N/A** |

*The auction values displayed include typical eqiupment and adjustments for mileage and any of the following applicable accessories: engine size, drivetrain, and trim.

## Selected Options

|  | Trade-In/Loan | Retail |
|---|---|---|
| Rear Parking Sensors | w/body | w/body |